UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN JENNINGS,

      Plaintiff,                              Civil Action No.
                                               05-CV-70601-DT

vs.

                                              HON. BERNARD A. FRIEDMAN

AUTOZONE, INC.,

      Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      This matter is presently before the Court on Defendant's Motion for Summary Judgment

pursuant to Federal Rule of Civil Procedure 56.  Kevin Jennings ("Plaintiff"), acting pro se,

alleges that AutoZone, Inc., ("Defendant") racially discriminated against him by wrongfully

terminating him after cash disappeared from one of its stores.  Defendant admits that it

terminated Plaintiff, but Defendant states that the termination was for legitimate,

nondiscriminatory reasons.

      The Court has reviewed the pleadings and evidentiary documents in this case.[1]  Pursuant

to Eastern District of Michigan Local Rule 7.1(e)(2), the Court shall decide this motion without

oral argument.  The Court will grant Defendant's Motion for Summary Judgment.

---

     [1]Both Defendant's Motion and Plaintiff's Response lack page numbers, and the exhibits
are not labeled.  Therefore, in an effort to clarify its own citations to the record, the Court will
treat the first page of each brief as page one and each consecutive page as the next numbered
page.  The Court will label the Defendant's first exhibit as Exhibit A and the Plaintiff's first
exhibit as Exhibit 1; each consecutive exhibit will be labeled with the next letter or number,
respectively.

I.      **HISTORY OF THE CASE**

A.      **FACTUAL BACKGROUND**

Plaintiff is a black male in his mid-thirties.  (Pl.'s Compl., 3.)  In June 2003, Defendant hired Plaintiff as a part-time sales clerk at its Dearborn store.[2]  (Def.'s Answer ¶ 4; Def.'s Br. Supp. Mot., 9; Pl.'s Resp., 4-5.)  In September 2003, Plaintiff received a verbal warning and written notice for job performance and cash shortage.  (Def.'s Br. Supp. Mot., Ex. D.)  In February 2004, Plaintiff was promoted to Parts Sales Manager.[3]  (Id. Ex. B.)  One month later, in March 2004, Plaintiff received another verbal warning and written notice for a cash shortage.  (Id. Ex. E.)  Nonetheless, in June 2004, Plaintiff received an AutoZone letter thanking him for one year of service.  (Pl.'s Resp., Ex. 7.)

According to AutoZone policy, employees empty the cash register—"sweep"—and then place the collected cash—"drop"—in the store's safe.  (Def.'s Br. Supp. Mot., 11.)  On June 22, 2004, the Dearborn Store Manager (Richard Fussell) reported that $705.01 cash was missing from June 19, 2004.  (Id. Ex. F.)  Plaintiff was the "closing manager in charge on June 19, 2004."  (Id. Ex. H at 35.)  Also working that day was Matthew Smith, who was in his first week on the job.[4]  (Id. Ex. C, K; Pl.'s Resp., 6.)

Tom Seng, Defendant's Regional Loss Prevention Manager, began an investigation on

_____

[2]During Plaintiff's employment—from June 2, 2003, to July 13, 2004—at the Dearborn store, Defendant employed 26 people—*21 blacks (or 20 blacks and 1 biracial) and 5 whites*. (Def.'s Br. Supp. Mot., Ex. C.)

[3]Upon being promoted, Plaintiff received a congratulatory letter from the Vice President of Loss Prevention.  The letter explained the company's policies and expectations for employees, like Plaintiff, who hold management roles.  (Pl.'s Resp., Ex. 8.)

[4]In October 2004, Defendant terminated Smith for "theft" in an unrelated incident.  (Pl.'s Resp., Ex. 17.)

July 7, 2004. (Def.'s Br. Supp. Mot., 9; Pl.'s Resp., 7.) It seems that District Manager Angel DeJesus was present during Seng's investigation. (Pl.'s Resp., 8.) The investigation included a review of the store's interior surveillance videotape from June 19, 2004 (Def.'s Br. Supp. Mot., 9 and Ex. F); an in-person interview with Plaintiff on July 7, 2004 (Id. Exs. I, F); a telephone interview of Smith on July 9, 2004 (Id. Exs. F, K); and written statements from both Plaintiff and Smith (Id. Exs. I, K). In his interview and written statement, Smith reported that he collected the money, placed it in a sealed envelope, and handed that envelope to Plaintiff; however, Smith states that he did not see Plaintiff place the envelope in the safe. (Id. Ex. K.) Plaintiff denies that he took the money. (Id. Ex. I.)

Plaintiff states that he told the new Store Manager (Clarence Johnson) about the interview. (Pl.'s Resp., 8.) He further states that on that same day—July 7, 2004—he called Defendant's regional offices in order to file a complaint of discrimination and harassment against Seng and Dejesus. (Id. at 9.) After two phone messages, Plaintiff talked to the Defendant's Human Resources Manager (William Banks) on July 9, 2004. (Id.)

Throughout the investigation, Plaintiff continued to work for Defendant. (Id.) However, on July 13, 2004, Defendant terminated Plaintiff's employment for "Violation of Company Policy." (Def.'s Br. Supp. Mot., Ex. L.) Plaintiff states that he "was fired for theft"; however, he admits that Defendant explained to him that his termination was for "failing to secure AutoZone funds and loss of confidence."[5] (Id. Ex. H at 25.) In the two years since his termination, Plaintiff remains unemployed. (Id. Ex. H at 21.)

_____

[5]Defendant's written employment policy includes "improper cash handling procedures" in its list of "[s]erious violations." (Def.'s Br. Supp. Mot., Ex. M.) Plaintiff states that Defendant's "policies and procedures" were explained to him and that he "read and signed AutoZone['s] code of conduct." (Pl.'s Resp., 5.)

### B.    PROCEDURAL HISTORY

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2004.  (Pl.'s Compl., 3; Def.'s Answer ¶ 7.)  Plaintiff alleged that he was the victim of racial discrimination from July 7, 2004, until July 13, 2004.  (Pl.'s Compl., 1.)  After its investigation, the EEOC dismissed Plaintiff's charge in December 2004.  (Id. at 4.)

Plaintiff then timely filed a Complaint in federal court on February 17, 2005.  Defendant filed an Answer on March 23, 2005.  Defendant filed its Motion for Summary Judgment on May 15, 2006.  Plaintiff filed his Response on June 5, 2006.[6]  Defendant filed its Reply on June 14, 2006.  (Plaintiff inappropriately filed a Reply as well, on June 26, 2006.  The Court will disregard Plaintiff's Reply, for the Local Rules do not provide for such an action and moreover, it was untimely.)

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."  Marrs v. Tuckey, 362 F.Supp.2d 927, 934 (E.D. Mich. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Thus, the Sixth Circuit has explained that the non-moving party

---

[6]Plaintiff's Response seems to include his own Motion for Summary Judgment.

4

"cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).

## III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's Complaint is brought, pursuant to Title VII of the Civil Rights Act of 1964, for employment discrimination based on race. (Pl.'s Compl., 1, 3.)  In his Complaint, Plaintiff alleges wrongful termination; no due process; harassment; job discrimination; false accusation of stealing; retaliation; and violation of the Equal Pay Act.  (Id. at 2-3.)

The Court finds that Plaintiff's claims fly in the face of reality, for Plaintiff repeatedly cries foul but cannot seem to explain how "race" triggered the alleged instances of misconduct.[7] The Court finds that, in reality, Plaintiff is simply upset with Defendant's *business decision* to terminate his employment.[8]  Plaintiff seems to want the Court to second guess the Defendant's investigation and business decision to terminate Plaintiff.  Such second-guessing is not the purpose of Title VII.  In fact, the United States Supreme Court has instructed that Title VII was "not intended to diminish traditional management prerogatives."  Texas Dep't of Cmty. Affairs

---

[7]At several points in his deposition, Plaintiff seems confused about why he has sued Defendant—discrimination based on *race*.  For instance, Plaintiff claims that he is being "underpaid" because of his race.  (Def.'s Br. Supp. Mot., Ex. H at 121.)  He supports his accusation by stating that the other three Parts Sales Managers in the Dearborn store are making more money than him.  Plaintiff's assertion, though, makes absolutely no sense, as the other three employees are a *black* man, a *black* or *biracial* man, and a white man.  (Id. Exs. C, H at 121-22.)

[8]From January to October 2004, Defendant terminated six Parts Sales Managers, including Plaintiff.  Those employees included *three* blacks and *three* whites.  (Def.'s Br. Supp. Mot., 16.)

5

v. Burdine, 450 U.S. 248, 259 (1981) (quotations omitted).  Thus, the Court will not interfere with the business judgment decisions of Defendant.

That said, it would be improper for Defendant to discriminate, harass, or terminate Plaintiff because of his race.  However, that is not what happened here.  Plaintiff's claims, even when taken in the most favorable light, fail because Plaintiff neither pleads nor presents evidence of the elements required for his claims.

### A.      CLAIM OF RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., states that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (2003).  A plaintiff can "establish a prima facie case under Title VII for racial discrimination by introducing direct evidence of discrimination or by using the *McDonnell-Douglas[/Burdine]* burden-shifting paradigm" (for indirect or circumstantial evidence).  Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 561 (6th Cir. 2004).  The United States Supreme Court, in often-quoted language, has explained the burden-shifting framework.  The Supreme Court has instructed that the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination."  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the plaintiff establishes a prima facie case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Id.  If the defendant meets its burden, the "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

6

Burdine, 450 U.S. at 253.

In the case at hand, Plaintiff fails under both the direct-evidence and indirect-evidence standards.  First, Plaintiff fails to introduce direct evidence of racial discrimination.  Plaintiff states that Defendant's Regional Manager (Dave Michalak) hung up "a yellow [rubber] chicken in the store."  (Pl.'s Resp., 6.)  Plaintiff states that he "found it to be offensive" (Id.); however, Plaintiff cannot explain why a yellow rubber chicken would be *racially* offensive.  For instance, Plaintiff does not state that the Regional Manager made derogatory gestures, racial slurs, or anything that would even remotely connect the rubber bird with racism or discrimination.  Plaintiff only states that he found the chicken to be "offensive."  Thus, the Court finds that the yellow rubber chicken is not direct evidence or any evidence of racial discrimination.

Next, Plaintiff states that the manner in which Seng conducted the interview was racially discriminatory.  Plaintiff states that Smith should have been the only "suspect" in the investigation.  (Id. at 12.)  Plaintiff alleges that Seng stated that "you people get hard up when you cant [sic] afford to pay your bills."  (Id. at 7.)  Plaintiff states that Seng said he would "go to bat for me [Plaintiff]."  (Id.)  Furthermore, Plaintiff alleges that Seng called him a "thief" (Id.) and said that he was "sick of you people" (Def.'s Br. Supp. Mot., Ex. H at 102).  Plaintiff states that Seng's "comments had racial intent in them." (Id. Ex. H at 103.)  Seng denies making such comments.  (Id. at 22.)

Even if Seng were to have made such comments, the statements would still not be considered sufficient direct evidence of racial discrimination.  Plaintiff neither shows that the alleged statements were racially motivated nor how they would demonstrate a policy of racial discrimination.  For instance, the Court does not understand the racial nature of Seng's alleged statement that he would "go to bat" for Plaintiff.  Moreover, Plaintiff finally admits that the

7

statement was merely "insulting."  (Id. Ex. H at 103.)  In addition, the Court finds no racial basis

in Defendant's decision to interview *both* Plaintiff and Smith, as they were both employees

working in the store when the money disappeared.

As for the alleged "you people" statements, Plaintiff has not explained how they are

racially offensive.  Plaintiff just repeats his circular reasoning that such statements are offensive

because they are offensive.  Moreover, there are many possible interpretations of the alleged

comments.  Seng could have been referring to *people who steal* from Defendant.  Or, Seng could

have been using investigative techniques designed to elicit the truth and aid in his investigation.

Furthermore, and most importantly, the Sixth Circuit has found that "'offhand comments, and

isolated incidents' do not amount to direct evidence of discrimination under Title VII."

Singfield , 389 F.3d at 561 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988)).

Therefore, even if these comments were made, they do not rise to the level of direct evidence of

racial discrimination.

However, even though Plaintiff fails to provide sufficient direct evidence of racial

discrimination, he can still seek to establish racial discrimination by indirect evidence.  In such a

case, the burden-shifting McDonnell Douglas/Burdine paradigm applies.  A plaintiff must

establish a prima facie case by showing "(1) that he is a member of a protected group; (2) that he

was subject to an adverse employment action; (3) that he was qualified for the position from

which he was fired; and (4) that he was treated differently than employees outside of the

protected class for the same or similar conduct."  Id.  The fourth element—disparate

treatment—is demonstrated by "showing that *similarly situated* non-protected employees were

treated more favorably" than plaintiff.  Id. at 562 (emphasis added).  The Sixth Circuit has

explained that "the plaintiff must show that the 'comparables' are similarly-situated *in all*

respects." <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir. 1992). The Sixth Circuit has

further explained that "in all respects" means that a plaintiff must show that "all of the *relevant*

aspects of his employment situation were 'nearly identical' to those of [the non-minority's]

employment situation." <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir.

1998) (quotations omitted). In other words, "similarly-situated" individuals cannot have

"differentiating or mitigating circumstances that would distinguish their conduct or the

employer's treatment of them for it." <u>Mitchell</u>, 964 F.2d at 583.

Here, Plaintiff claims that he was treated differently than Matthew Smith, a white

employee in the store, during the investigation of the missing money. (Pl.'s Resp., 12.) Plaintiff

alleges that, as mentioned above, Seng—Defendant's Regional Loss Prevention Manager—was

rude to him during his investigatory interview. In addition, Plaintiff takes issue with the fact that

Seng conducted an in-person interview of Plaintiff on July 7, 2004, but a telephone interview of

Smith on July 9, 2004.

Plaintiff satisfies the first and second elements of a prima facie case for racial

discrimination—he is an African-American (member of a protected group) whose employment

was terminated (adverse employment action). As for the third element (plaintiff is qualified for

position), Defendant apparently found Plaintiff to be qualified. At the time of the incident,

Defendant had employed Plaintiff for more than one year. Moreover, Defendant continued to

employ Plaintiff, even though Plaintiff had received two prior warnings for cash shortages in the

store. That said, Plaintiff's "quality" surely became questionable when Defendant found

Plaintiff had improperly handled more than 700 hundred dollars in cash. Nonetheless, Plaintiff

could argue that he satisfies the third prong of the prima facie case.

Plaintiff, though, does not satisfy the fourth element of the prima facie case—similarly-

situated employees, who were not members of the protected group, were treated more favorably than Plaintiff. First, Plaintiff has not shown that he and Smith are similarly-situated in all relevant employment aspects. At the time of the incident at hand, Plaintiff had already received *two* warnings about improper cash handling and missing money. Plaintiff presents no evidence that Smith had any violations or warnings on his employment record. Plus, Plaintiff had worked in the store for more than *one year*. Smith was finishing his *first week* on the job. Although they were both Parts Sales Managers, the more experienced Plaintiff had more responsibility, as Plaintiff admitted that he was the closing manager in charge on June 19, 2004. (Def.'s Br. Supp. Mot., Ex. H at 35.) Thus, the Court finds that Plaintiff's and Smith's employment situations were not "nearly identical" in all "relevant aspects."

Moreover, Plaintiff completely fails to show that Smith was treated *more favorably* than him. Plaintiff admits that he does not know whether Seng conducted his interviews of white people any differently than he did his interview of Plaintiff. (Id. at 103.) Thus, Plaintiff has no idea or evidence about how Seng interviewed Smith, and he can therefore not claim that Seng treated Smith more favorably than he treated Plaintiff.

In fact, Seng seems to have conducted the investigation in a consistent manner. He watched the surveillance videotape and saw Plaintiff and Smith on the tape. He interviewed Plaintiff. He interviewed Smith. He conducted both interviews in the early afternoon. He prepared written statements of each interview. The written statements are similar in length. Plaintiff, though, asserts that it was unfair that Seng interviewed him in person on July 7, 2004, but conducted a telephone interview of Smith on July 9, 2004. However, Plaintiff fails to demonstrate why the difference would amount to more "favorable" treatment. Therefore, Plaintiff has not satisfied the fourth element of a prima facie case for racial discrimination, as he

fails to show that similarly-situated employees were treated more favorably than him.

However, even if the Court were to assume that Plaintiff sufficiently stated a prima facie case, Plaintiff would still fail to satisfy the McDonnell Douglas/Burdine paradigm.  If Plaintiff were to present a prima facie case of racial discrimination, then the burden would shift to the Defendant to present a "legitimate, nondiscriminatory reason" for Plaintiff's termination. McDonnell Douglas, 411 U.S. at 802.  The United States Supreme Court has instructed that "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine, 450 U.S. at 254.  Moreover, the Supreme Court has explained that the "defendant need not persuade the court that it was actually motivated by the proffered reasons." Id.

Here, Defendant provides legitimate reasons for Plaintiff's termination.  First, at the time of the incident, Defendant had already issued two warnings to Plaintiff about cash shortages and improper money handling.  The investigation at hand was the third time that Plaintiff was involved in a cash-shortage situation.  Second, Seng—Defendant's Regional Loss Prevention Manager—watched the store's surveillance videotape.  Seng stated that he could see, on the tape, that Smith handed the cash to Plaintiff, but Plaintiff did not put the cash in the safe.  Thus, the Court finds that Defendant provided legitimate, nondiscriminatory reasons for terminating Plaintiff's employment.

The burden now shifts back to Plaintiff.  At this point, a plaintiff must show that "the proffered reason was not the true reason for the employment decision." Id. at 256.  The Sixth Circuit has explained that a "'plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" Dews v. A.B. Dick Co., 231 F.3d

11

1016, 1021 (6th Cir. 2000).

Here, Plaintiff fails to demonstrate that Defendant's employment decision was merely pretext. Plaintiff does not show that Defendant's termination of Plaintiff—for "violation of company policy"—was not based in fact, nor that it was not the actual motivation behind Defendant's decision to terminate Plaintiff, nor that Plaintiff's violation of company policy was insufficient to warrant termination. Thus, similar to Plaintiff's failure to show direct evidence of racial discrimination, Plaintiff fails to present a discrimination claim based on indirect evidence through the McDonnell Douglas/Burdine burden-shifting paradigm.

### B.   CLAIM OF RETALIATION

Plaintiff states that his termination was in retaliation for his complaints to Defendant's Human Resources Manager (William Banks) about the alleged discriminatory investigation. Plaintiff states that his retaliation claim is against only Seng, DeJesus and Banks. (Def.'s Br. Supp. Mot., Ex. H at 117-18.) Plaintiff's retaliation claim fails as to all three.

In order for a plaintiff "[t]o establish a *prima facie* case of unlawful retaliation under Title VII, the plaintiff must demonstrate by a preponderance of the evidence that: 1) he engaged in activity that Title VII protects; 2) defendant knew that he engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists." Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003). The Sixth Circuit has stated that "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Similar to racial discrimination claims brought under Title VII, the McDonnell Douglas/Burdine burden-shifting paradigm similarly applies to Title VII retaliation claims.

12

Although the burden is not "onerous," Plaintiff here fails to establish a prima facie case of retaliation because he fails to satisfy the fourth prong.  Plaintiff does not show that there is a causal connection between his discussion with Banks and his termination.  The Sixth Circuit has held that in order "[t]o establish the causal connection that the fourth prong requires, the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that title VII protects."  Abbott, 348 F.3d at 543.  In this case, Plaintiff has not produced sufficient evidence to persuade the Court that, *but for* Plaintiff's phone call, Defendant would not have terminated Plaintiff's employment.  Plaintiff had already been warned—twice—about improper cash handling and cash shortages in the store.  Moreover, Seng reviewed a surveillance videotape on which he states Smith handed the cash drop to Plaintiff, but Plaintiff did not place the cash drop in the safe.  Even when taking the evidence in the light most favorable to Plaintiff, the Court is not persuaded that Plaintiff has satisfied the fourth prong of a prima facie case for retaliation.[9]  Therefore, Plaintiff fails to establish a retaliation claim.[10]

## C.    CLAIM OF RACIAL HARASSMENT

The Sixth Circuit has explained that "Title VII prohibits racial harassment that creates a hostile or abusive work environment."  Newman v. Fed. Express Corp., 266 F.3d 401, 405 (6th Cir. 2001).  To establish such a claim, "a plaintiff must show: 1) that he is a member of a

---

[9]Even if Plaintiff were to establish a prima facie case for retaliation, he would still fail to establish a claim under the McDonnell Douglas/Burdine burden-shifting paradigm.  As Plaintiff bears the ultimate burden of persuasion under the paradigm, the Court finds that his Title VII retaliation claim would fail for the same reasons that his Title VII racial discrimination claim failed.

[10]Plaintiff finally admits that he has no facts "at this moment" to support his belief that Seng retaliated against him.  (Def.'s Br. Supp. Mot., Ex. H at 118.)

protected class; 2) that he was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability." Id.  The Sixth Circuit instructs that a court should "consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Lastly, the "work environment must be both objectively and subjectively offensive." Id.

Here, Plaintiff fails to establish a sufficient claim of racial harassment.  First, Plaintiff has not produced evidence that he was racially harassed.  Plaintiff does not show that the alleged conduct was so frequent as to create a continually hostile or abusive workplace environment. Plaintiff has likewise failed to show that Defendant engaged in physically threatening or humiliating conduct, as opposed to conduct that was merely considered offensive by Plaintiff. Thus, Plaintiff has not established a prima facie case of racial harassment.

### D.    CLAIM OF TERMINATION WITHOUT DUE PROCESS

Plaintiff alleges that his rights were violated when he was terminated without due process.  Plaintiff, though, seems to forget that he was an "at-will" employee.  Defendant's written policy expressly states: "Employment with AutoZone is an at-will relationship.  This means you and AutoZone have the right to terminate your employment at any time, with or *without cause or notice*."  (Def.'s Br. Supp. Mot., Ex. P (emphasis added).)  Plaintiff is surely aware of this policy, as Plaintiff signed below the following statement: "I understand that the employment is for no definite period of time and may be terminated at will by me or by

14

AutoZone with or *without cause or notice at any time*."  (Pl.'s Resp., Ex. 1 (emphasis added).)

Therefore, Plaintiff did not have a protected property interest in continued employment.  As

such, there was no violation of due process.[11]

      **E.**      **CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CAUSED BY FALSE ACCUSATION OF THEFT**

Under Michigan law, the "elements of a prima facie case of intentional infliction of

emotional distress are: (1) extreme or outrageous conduct, (2) which intentionally or recklessly,

(3) causes, (4) extreme emotional distress."  McCahill v. Commercial Union Ins. Co., 446

N.W.2d 579, 582 (Mich. Ct. App. 1989).  The defendant's conduct must be "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious and utterly intolerable in a civilized community."  Garretson v. City of

Madison Heights, 407 F.3d 789, 799 (6th Cir. 2005) (quotations omitted).  Furthermore, the

Sixth Circuit has instructed that "[l]iability will not be found for 'mere insults, indignities,

threats, annoyances, petty oppressions, or other trivialities.'"  Id. (quoting Doe v. Mills, 536

N.W.2d 824, 833 (Mich. Ct. App. 1995)).

Here, Plaintiff does not meet the elements of a claim for intentional infliction of

emotional distress.  Plaintiff has not shown extreme or outrageous conduct by Defendant.

Instead, Plaintiff complains of being insulted by a rubber chicken and an investigative interview.

The Court does not regard such alleged conduct as "outrageous."  Moreover, Plaintiff fails to

show that Defendant *intended* to cause emotional distress to Plaintiff.  Plus, Plaintiff does not

---

[11]Moreover, Defendant terminated Plaintiff only after it had concluded a thorough investigation and found that Plaintiff had violated company policy.  Plus, according to Plaintiff himself, he was allowed to continue to work at the store even after the incident was first reported and throughout the duration of the investigation.

show that he suffered any emotional distress.  Therefore, even when taken in the light most favorable to Plaintiff, the Court finds that Plaintiff's allegations do not satisfy any of the elements required of a claim for intentional infliction of emotional distress.

**F.**    **CLAIM OF VIOLATION OF EQUAL PAY ACT**

The Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), "prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite *sex* for performing equal work."  Beck-Wilson v. Principi, 441 F.3d 353, 359 (6th Cir. 2006) (emphasis added).  The Sixth Circuit has explained that "[i]n order to establish a prima facie case of wage discrimination under the EPA, plaintiffs must show that an employer pays different wages to employees of *opposite sexes* for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  Id. (quotations omitted) (emphasis added).

Here, Plaintiff brings a wage discrimination claim because he believes his salary is lower than the salaries of the other Parts Sales Managers in the store.  Plaintiff's EPA claim fails, though, because the other Parts Sales Managers are *male*, not female.  The EPA requires that the employees be of the opposite sex.  Therefore, Plaintiff cannot prove a violation of the Equal Pay Act.

**IV.**    **CONCLUSION**

Based upon the record established and documentary evidence presented, the Court finds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.  Therefore, for the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment.  Accordingly,

16

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice.

___s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated:  July 12,  2006
        Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
        Patricia Foster Hommel
    Secretary to Chief Judge Friedman

17